CENTRAL EUREKA MINING COMPANY (A Corporation)

v.

The UNITED STATES.

ALASKA-PACIFIC CONSOLIDATED MINING COMPANY

v.

The UNITED STATES.

IDAHO MARYLAND MINES CORPORATION

v.

The UNITED STATES.

HOMESTAKE MINING COMPANY

v.

The UNITED STATES.

(1) BALD MOUNTAIN MINING COMPANY, (7) Ermont Mines, Inc.

v.

The UNITED STATES.

Nos. 49463, 49693, 50182, 50195, 50214.

United States Court of Claims.
July 12, 1956.

Phillip Barnett, San Francisco, for plaintiff Central Eureka Mining Co. Ralph D. Pittman, Washington, D. C., and Rodney H. Robertson, San Francisco, Cal., were on the brief.

John Ward Cutler, Washington, D. C., for plaintiffs, Bald Mountain Mining Co., and Ermont Mines, Inc.

O. R. McGuire, Jr., Washington, D. C., for plaintiff Alaska-Pacific Consolidated Mining Co. Hogan & Hartson, Washington, D. C., and V. A. Montgomery, Seattle, Wash., were on the brief.

George Herrington, San Francisco, Cal., for plaintiff Idaho Maryland Mines Corp. Orrick, Dahlquist, Herrington & Sutcliffe, San Francisco, Cal., were on the briefs.

Edward W. Bourne for plaintiff Homestake Mining Co. James D. Ewing, Eugene Z. Du Bose, Edward E. Rigney, J. Kenneth Campbell and James W. Misslbeck, New York City, were on the briefs.

Kendall M. Barnes, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

In support of its motion for a rehearing in the above cases, the Government says that the court erred in holding that the issuance of War Production Board Limitation Order L–208 amounted to an exercise of the Government's wartime power of requisitioning or eminent domain because (1) in issuing L–208 the

Government did not expressly intend or purport to exercise such requisitioning powers and (2) if L–208 was an "invalid" order, as defendant insists the court held it was, it conferred no right on the plaintiffs to just compensation. On the whole record the court is of the opinion that defendant's motion should be denied.

Defendant attempts to create the impression that this court held that the War Production Board purported to act under a single act, i. e., the Act of October 16, 1941, 55 Stat. 742, containing certain requisitioning powers, when it issued L–208, whereas, defendant says, the record in these cases will not support such a conclusion.

The court did not hold that WPB purported or intended to exercise any of its several requisitioning powers when it issued L–208. The court noted the various authorities actually cited at the conclusion of L–208 including Executive Order 9024, U.S.Code Congressional Service 1942, p. 49, which contained a delegation of the President's requisitioning authority conferred by section 120 of the National Defense Act of 1916, 39 Stat. 166, 213, 50 U.S.C.A. §.80. Beyond that, the court merely noted the various statutes in effect on the date of the issuance of L–208 which gave the Government wide powers to take private property needed by the Government to carry on the defense of the country in wartime, and held that under such a statutory scheme the Government appeared to have had adequate power to take what it in fact took from the plaintiff gold mine owners and operators.

■ On the matter of whether WPB "intended" or "purported" to act under any of the statutes giving the Government the power to take or requisition private property for war purposes, the court held that WPB purported to issue a priorities and allocation regulation; that to the extent that L–208 prevented the gold mine owners and operators from acquiring . new equipment, material and facilities, L–208 was a proper priorities and allocation order, but that to the extent that L–208 denied those owners the right and clear authority which they and every other citizen have to make use of the materials, facilities and equipment which they owned and had on hand, in the operation of their legitimate and legal mining enterprises, L–208 had the effect of completely depriving them of a valuable property right. The court then held that because the Government had the authority to exercise the power of eminent domain and thus to deprive the gold mine owners of that property right, the Government must pay just compensation therefor whether this was done by the WPB in one form or another.

The court did not hold, as counsel for defendant says it did, that L–208 was an invalid order. The court held that to the extent that L–208 actually allocated scarce materials away from the gold mine owners and operators it was a valid allocation order, but that to the extent that it deprived the gold mine owners of the right to use their mining properties by "immobilizing" the materials, equipment and facilities owned by them and which they had on hand and needed to use to operate their mines, the order amounted to a temporary taking of their right and authority to profitably operate their mines.

■■ The court expressly stated that an unauthorized taking is not compensable. It also stated that where there exists authority for a taking of a type of property and the Government, as it did here, takes that property, the use by the Government of a means of acquiring that property, which means was not specifically spelled out by some specific statute, does not relieve the Government of the obligation of paying just compensation, citing, among others, the case of Edward P. Stahel & Co., Inc., v. United States, 78 F.Supp. 800, 111 Ct.Cl. 682, certiorari denied 336 U.S. 951, 69 S.Ct. 878, 93 L.Ed. 1106. Where there is authority to take and a taking is accomplished, it is compensable. In the Stahel silk cases the Government had the statutory authority to take the plaintiffs' silk; the Government did not "purport" to exercise that

power but rather it purported to exercise a regulatory power by issuing Order M-251 freezing or immobilizing the silk in the hands of the owners themselves until the Government should place mandatory orders requisitioning the silk. This freezing order was held to be a taking and, because the Government had the necessary power and statutory authority to "take" the silk, the court held that it must pay just compensation for it and it did so.

Defendant next attempts to analyze some of the requisitioning statutes noted by the court, in order to indicate that WPB did not in fact invoke any of those statutes when it issued L-208. This court did not hold that WPB invoked those statutes any more than it held that the Government invoked the requisitioning statutes available to it in the Stahel silk cases. In fact, this court noted that WPB issued L-208 with the express (see preamble to the order) intention of exercising only its priority and allocation powers. The court held that what WPB said it was doing and what it in fact and law did, were two different things and that the Government could not escape the obligation of paying just compensation for what it had the authority to take and in fact took, simply by calling its action of taking a "priorities order" or an "allocation order".

Defendant's counsel also says that the expression used by the court, "war necessity", does not appear in the "taking statute" of October 16, 1941, supra. In using that expression the court was merely paraphrasing, as it had a right to do, the statutory language concerning the basis for the President's determination that the property proposed to be taken was necessary to the prosecution of the war; that the property was needed for the defense of the United States; that the need was immediate and impending and that all other means of getting the property had been exhausted. Inasmuch as that statute and other requisitioning statutes then in existence required no particular procedure to be followed in the making of those determina-

tions and provided no appeals therefrom, the court held such determinations were within the discretion of the President or his delegees.

The main complaint of defendant's counsel seems to be that this court held that the Government had the necessary authority to take plaintiffs' property whereas the question of "authority" was not exhaustively briefed by the parties to the court.

It should be noted that this is the *first* occasion in this lengthy litigation on which the Government has taken the position that it lacked authority to take plaintiffs' property. No such contention has heretofore been made. Up to this point, defendant has contended that it did not take the property but merely "regulated" it. It would seem that as a defense "lack of authority to take", if there was any such lack of authority, which we think there was not, should have been raised and supported at an earlier stage. However, both parties may have felt that authority to take this property in wartime was perfectly clear, or they may have felt the point was decided in the court's decision in Oro Fino Consolidated Mines, Inc., v. United States, 92 F.Supp. 1016, 1019, 118 Ct.Cl. 18, in which the court held that if the Government took anything from the gold mine owners when it issued L-208, it "cannot escape liability by pleading that it lacked authority to take what it did in fact take and retain," citing International Paper Co. v. United States, 282 U.S. 399, 51 S.Ct. 176, 75 L.Ed. 410. The court in the Oro Fino case even went so far as to say that if L-208 resulted in an *unauthorized* taking, "it was a taking of which the Government retained the benefit and for which it would therefore be obligated to pay." [118 Ct.Cl. 18, 92 F.Supp. 1019]

In the Central Eureka opinion, the court did not go as far as suggested in the Oro Fino decision because the court found that the existing statutory scheme at the time of the issuance of L-208 contained sufficient authority to cover the taking complained of and thus avoided that twilight area involving the right to

just compensation where authority to take the property involved is not clear. On that point, in the recent decision of the Supreme Court in Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 751, the Court stated:

> " * * * The fact that the agents [of the Government] did not have actual authority for the procedure they employed does not affect liability. There is an area, albeit a narrow one, in which a government agent, like a private agent, can act beyond his actual authority and yet within the scope of his employment. * * * "

The point involved in the Central Eureka opinion was not the lack of authority to take, but rather the use by the Government of an *unauthorized means* of accomplishing an *authorized* taking. The court held that the use of an unauthorized means of taking what the Government had the authority to take, did not relieve the Government of the obligation to pay just compensation for what it took, citing Edward P. Stahel, supra, (silk cases), and Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637, (in which the Government took by *flooding* what the statute said it must take by *condemnation proceedings)*.

█ The final position of defendant's counsel seems to be that the only cases in which the Government may be required to pay just compensation for property which it is authorized to take and does take, are those cases in which the Government has expressly invoked a particular taking or requisitioning statute, has used the precise means of taking provided for in that statute, and has then refused to pay for what it has taken. This theory, if adopted, would rule out many taking cases among which are cases such as the silk cases, the set-aside order cases, the flooding cases, the Causby chicken farm case, and, in fact, most of the "taking" cases.

█ In these cases the court held simply that what the War Production Board did through the issuance of L–208 amounted to and constituted a taking through the placing of a servitude upon the use by plaintiffs of their property and plaintiffs were accordingly held entitled to recover. From this it seems clear, under the decisions, that there was a temporary taking under the Fifth Amendment. The court did not hold that there was anything illegal about the issuance of L–208 so far as its provisions were concerned. It merely held that when a Government agency has the power to take private property, as the War Production Board did, it does not have to act in some particular formal way in order that its action shall amount to a taking.

In view of the fact that defendant's allegations of error are based on a demonstrably mistaken understanding of the court's opinion and upon conclusions clearly not warranted by that opinion, inasmuch as the court did not hold that L–208 was an invalid order and did not hold that the War Production Board purported to act under or invoke the requisitioning powers contained in any particular statute, defendant's motion for a new trial is overruled.

MADDEN and WHITAKER, Judges, concur.

JONES, Chief Judge, and LARAMORE, Judge, dissent.